**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

| | |
|---|---|
| **WILLIAMSON POUNDERS ARCHITECTS, P.C.** | **PLAINTIFF** |
| **V.** | **CASE NO. 2:06CV206** |
| **TUNICA COUNTY, MISSISSIPPI, ITS BOARD OF**<br>**SUPERVISORS AND ITS BOARD MEMBERS,**<br>**JAMES DUNN, CEDRIC BURNETT, PAUL BATTLE, III**<br>**CURTIS JACKSON, AND BILLY PEGRAM** | **DEFENDANTS** |

## MEMORANDUM OPINION

This cause comes before the court on the motion [52] of all defendants (hereinafter "Tunica County") to reconsider the denial of their motion to dismiss or in the alternative for interlocutory appeal by permission.

While the Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, the Fifth Circuit has held that such a motion may be entertained by a court and should be treated either as a motion to "alter or amend" pursuant to Rule 59(e) or a motion for "relief from judgment" pursuant to Rule 60(b). *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991). If the motion for reconsideration is filed and served within ten days of the rendition of judgment, the motion falls under Rule 59(e). *Id.* If it is filed and served after that time, it falls under the more stringent Rule 60(b). *Id.* This motion was filed more than ten days after the entry of this court's order, so it will be treated as a motion for relief from judgment under Rule 60(b).

A court may relieve a party or its legal representative from a final judgment, order, or proceeding under Rule 60(b) for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

<u>Facts</u>

On May 15, 2001, Tunica County entered into a standard American Institute of Architects ("AIA") contract with Williamson Pounders Architects ("WPA") to design a project known as the Tunica County River Front Park. On May 25, 2001, WPA entered into an AIA consultant contract with PDR Engineers, Inc., a Tetra Tech Company ("Tetra Tech").

On February 7, 2002, WPA and Tetra Tech met with county representatives. During that meeting County Administrator Kenneth Murphree requested changes that resulted in an increase in the scope and complexity of the project. The overall budget increased from $18 million to $24 million. On November 25, 2003, Tetra Tech submitted a change order request for additional services to WPA. In May 2004, Tetra Tech, WPA, and Tunica County held a meeting regarding the change order request. WPA contends that Tunica County acknowledged the amount owed and requested more information detailing the request. Tunica County denies further amounts are owed to Tetra Tech or WPA. Tetra Tech mailed Tunica County a letter outlining the increases in the project on June 3, 2004. On January 12, 2005, WPA sent a letter to Tunica County requesting payment of the change order. The instant suit was filed December 13, 2006 seeking fees in the amount of $203,195.00. On January 19, 2007, Tunica County filed a motion to dismiss for failure to state a claim upon which relief may be granted. This court denied that

motion on September 28, 2007.

Tunica County's original motion contends that WPA's complaint should be dismissed because (1) the statute of limitations in Miss. Code Ann. § 15-1-49 bars all claims asserted by WPA; (2) WPA's quantum meruit claim is barred by Miss. Code Ann. § 11-46-11; (3) WPA failed to obtain a change order form from Tunica County; (4) there is no privity of contract between Tetra Tech and Tunica County; and (5) any equitable estoppel claim asserted should be dismissed because WPA/Tetra Tech intentionally concealed this claim from Tunica County. In order to determine the outcome of these issues, the court first had to determine whether Tennessee or Mississippi substantive law applied to the contract[1]. The court determined that Tennessee law applied. The instant motion asks the court to reconsider that determination. WPA contends that the plain language of the contract calls for the application of Tennessee law. Tunica County contends that Mississippi law and public policy require that the choice of law provision in the contract be set aside and Mississippi law applied.

Having reviewed the parties' briefs relating to the instant motion and those briefs filed in conjunction with Tunica County's initial motion to dismiss, the court finds that justice requires revisiting the challenge to the entirety of the suit. The parties have had ample opportunity and motivation to fully brief the issues. Review of all matters raised in the original motion will result in no prejudice and will serve to dispose of improper issues.

Analysis

Tunica County's initial motion was brought under Rule 12(b)(6) challenging whether WPA had stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In

---

[1] There is no dispute that Mississippi procedural law will apply where it has not been overridden by federal procedures. *See Ford v. State Farm Ins. Co.*, 625 So. 2d 792, 793 (Miss. 1993).

reviewing a Rule 12(b)(6) motion, a court shall accept as true all well-pleaded factual allegations in the complaint and construe the complaint in the light most favorable to the plaintiff. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 357-58 (5th Cir. 2002). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964-65, 167 L..Ed. 2d. 929 (2007)(internal citations omitted). In order to survive a motion to dismiss, the plaintiff, while not required to provide a heightened fact pleading of specifics, must plead enough facts in the complaint to state a claim for relief that is plausible on its face.[2] *Id*. at 1974. . . . [O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969.

## Choice of Law

In order to decide the underlying claims, the court must first determine the applicable law.

Federal jurisdiction in this case is based on diversity of citizenship. This court is thus bound to apply Mississippi's rules regarding conflict of laws. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

In analyzing conflict of laws questions, Mississippi recognizes that "the law of a single state does not necessarily control every issue in a given case." *Boardman v. United Services Auto Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985). Mississippi has adopted a "general rule . . . that courts will give effect to an express agreement that the laws of a specified jurisdiction shall

---

[2] WPA does not lay out all the necessary facts in its complaint. However, the complaint has several attachments from which the court will attempt to find facts in order to read the complaint in the light most favorable to the plaintiff.

govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985). However, that principle is tempered where a choice of law provision would violate the forum state's public policy. *Id*.

Article 9.1 of the contract between Tunica County and WPA contains a choice of law provision designating that Tennessee law will apply to the agreement. Additionally, there is no dispute that WPA's principal place of business is in Tennessee and thus the choice of law provision clearly has some "real relation" to the state law chosen to govern the contract.

Tunica County raises three issues in which it disputes the applicability of Tennessee law. Tunica County asserts that Mississippi law should apply because (1) this suit is actually between Tetra Tech, who is not a party to the primary contract, and Tunica County; (2) Mississippi public policy prevents the enforcement of oral contracts against a board of supervisors; and (3) Mississippi public policy prevents equitable estoppel claims against boards of supervisors.

First, Tunica County states that the current action is a "pass through" claim. They argue that WPA is not alleging a breach of the primary contract, but is instead bringing a claim based on a breach of the subcontract between WPA and Tetra Tech. On the face of the amended complaint it is clear that WPA is asserting damages arising from the primary contract and the subcontract. However, all claims asserted by WPA are based on the primary contract.[3]

Tunica County cites *Sentinel Indust. Contracting Corp. v. Kimmins Indust. Serv. Corp.*

---

[3] Tunica County outlines a detailed history of Tetra Tech's attempts to collect directly from them. They use this history to argue that this is simply a suit by Tetra Tech in disguise. The original motion considered by the court was brought under Rule 12(b)(6). Thus the question before the court was whether the complaint states a claim upon which relief may be granted. This extrinsic evidence is improper and irrelevant at this time.

for the proposition that the choice of law provision should not be enforced in this matter. 743 So. 2d 954 (Miss. 1999). In *Sentinel*, Exxon Chemical Fertilizer Company ("Exxon") hired Sentinel/Centre as the general contractor to dismantle its ammonia refinery in Pascagoula, MS in order that the refinery might be shipped to Pakistan. *Id.* at 957. Sentinel/Centre hired Kimmins as its prime subcontractor. *Id.* Kimmins sued multiple parties, including Exxon and Sentinel/Centre, for damages and costs due for extra work performed outside the scope of its contract. *Id.* at 958. The primary contract between Exxon and Sentinel Centre contained a choice of law provision designating Texas law to govern the agreement. *Id.* at 959. The subcontract between Kimmins and Sentinel/Centre did not contain a choice of law provision. *Id.* Kimmins attempted to assert that the choice of law provision of the primary contract was incorporated into the subcontract. *Id.* The Mississippi Supreme Court rejected this argument holding that the plain language of the subcontract evidenced an intent to incorporate the primary contract only for the purposes of detailing the plans and specifications of the job. *Id.* The Court further stated that the choice of Texas law in the primary contract was invalid because it had no reasonable relationship to or significant contacts with the parties or subject matter of the litigation. *Id.*

The Mississippi Supreme Court offers little guidance in determining how it came to its second conclusion relating to the choice of law provision. The Court states that it "has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation . . . . In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, . . . the Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *Id.* (citing *Allstate*

*Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981)).  In this instance the Mississippi Supreme Court does nothing more than make a conclusory statement that "Texas has little contact with or interest in the outcome of a contract dispute between Kimmins and Sentinel/Centre."  *Id*.  The Court does not state what factors, if any, it applied in this matter.  Nor does the Court tell us the primary location or incorporation state of the parties.  With no clear test laid out by the Mississippi court, this court must determine whether a choice of law provision is "arbitrary or fundamentally unfair."

As such, *Sentinel* is distinguished from the instant action.  Tunica County has attempted to frame this suit as one brought by Tetra Tech.  However, WPA, not Tetra Tech, is suing Tunica County.  In *Sentinel*, the Mississippi Supreme Court found that the choice of law provision was not incorporated into the subcontract.  That is not an issue in the present matter.

This dispute springs from the primary contract.  In that primary contract, WPA and Tunica County have a valid choice of law provision.  WPA's principal place of business is Tennessee.  It is not unreasonable for a party to contractually obligate another to litigate under the laws of its principal place of business.  This is especially true in instances where a professional organization is governed by the professional rules and standards of its home state as in the present scenario.  Tunica County argues that this is a distinction based on style and not substance. Here style is substance.  The parties to an action determine the law to be applied and the claims that are available.  A suit by a subcontractor, as is the case in *Sentinel*, might bring a different result.  This suit, however, is styled as between the two primary parties and invokes the primary contract.  The contract in dispute has a valid choice of law provision between the two parties to the suit.  That provision implicates the law of the primary place of business of one of the parties.  This implication is neither arbitrary nor fundamentally unfair.  Under these facts, this

court must apply Tennessee substantive law.

Tunica County's request that the choice of law provision be invalidated is denied.

However, Mississippi's conflict of laws' jurisprudence requires that a court determine which law to apply to every issue in a case. This court will apply Tennessee law, but then determine if a compelling public policy to not enforce that law exists on an issue by issue basis.

<u>Substantive Issues</u>

WPA asserts three theories of recovery in its amended complaint: (1) Breach of contract; (2) quantum meruit; and (3) equitable estoppel.

<u>Breach of Contract</u>

Under Tennessee law a breach of contract claim must assert (1) the existence of an enforceable contract: (2) nonperformance amounting to a breach; and (3) damages caused by the breach of the contract. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, (Tenn Ct. App. 2005)).

There is no dispute that an enforceable contract was entered into on May 15, 2001. WPA asserts the nonperformance is Tunica County's failure to pay for additional service rendered. WPA admits that the payment it seeks is not covered by the budget of the initial contract, but is instead for additional work.

The terms of the contract address payment for additional work. Article 3.1.1 requires payment for most additional services only if "authorized or confirmed in writing by the Owner." This reinforces the writing requirement contained in Article 2.6.13 of the contract. WPA argues that the course of dealing between the parties waived this requirement. This argument is raised

in their response to the original motion to dismiss. There is no mention of "course of dealing" in the complaint. Neither does WPA lay out in its complaint facts that would support this theory. Thus, even if it is possible for the parties to have waived this writing requirement, WPA has not sufficiently plead facts to move forward under this theory.

Article 3.1.1 provides that the additional services enumerated in Article 3.3, if required due to circumstances beyond the Architect's control, may be compensated for if the Architect notifies the Owner prior to commencement of the services. The Owner then has the ability to avoid liability by giving prompt written notice that all or part of such services are not required. Article 3.3.2 includes "[p]roviding services required because of significant changes in the Project including, but not limited to, size, quality, [or] complexity." WPA seeks payment for services that could be under this heading. The two relevant questions, thus, become whether Tunica County made significant changes to the project and if those changes were made, whether WPA notified Tunica County of its intent to undertake the additional services.

WPA pleads that "[t]he quality and complexity of the Project significantly increased at the county's request and direction." This in itself is a conclusory statement. There seems to be no dispute that the complexity of the project was increased above the original agreement. The court must, however, determine if WPA has sufficiently plead that the change was made at the county's request and direction.

Attachment A to Exhibit C of the amended complaint reports that the budget change was approved at a February 7, 2002 meeting. This meeting was attended by Louis Pounders, Gary Copeland, Adam Brown, David Thompson, Ken Murphree, and Charlie Williams. None of these attendees are members of Tunica County's Board of Supervisors. The complaint treats Ken

Murphree as if he is Tunica County.  In reality Ken Murphree is the Tunica County

Administrator.[4]  Tunica County, the owner of the project, is its Board of Supervisors.  However,

Article 4.3 of the contract states that "[t]he Owner shall designate a representative authorized to

act on the Owner's behalf with respect to the Project.  The Owner or such designated

representative shall render decisions in a timely manner pertaining to documents submitted by

the Architect in order to avoid unreasonable dely in the orderly and sequential progress of the

Architect's services."  Thus under the contract Ken Murphree may have had authority to act for

Tunica County.  The complaint assumes that this authority exists.  This will be an issue requiring

proof, but taken as true it supports WPA's claim.

Assuming that Murphree had authority to act, WPA would still have to show that he did

act.  Under the terms of the contract all changes must be in writing.  WPA fails to clearly plead

this writing exists.  However, the fourth full paragraph of Exhibit C to the complaint offers a

statement that supports this claim.  This paragraph references the meeting in which Murphree

addresses and accepts the change in site plan.  The end of the paragraph then references a "final

site bid" which the document infers was in writing and accepted the significant changes.

It is possible that WPA could prove Tunica County made significant changes to the

complexity of the project which would have required additional services.  In order to prevail

though, WPA must also show that in accordance with Article 3.1.1 they notified Tunica County

of the additional services and that Tunica County did not dispute those services within a

reasonable time.  In paragraph 23 of the complaint, WPA asserts that Tunica County was aware

---

[4] WPA's response to the initial motion to dismiss states that the February 7 meeting was attended by representatives of Tunica County.  It lists Murphree and Deputy Assistant County Administrator, Charlie Williams, as being present.  No other representatives are specifically mentioned in any court documents.

of the additional services provided and remained silent as to those services even though the county knew WPA/Tetra Tech planned to recoup the additional expenses related to those services. This too is a conclusory statement.

The court turns to Exhibit C in looking for facts to support this contention. In that exhibit Tetra Tech states, "[w]e took the County's acceptance of the potential budget overruns as recognition by the County that greater effort would be required on behalf of the design team. It has become apparent that this may not have been the case." This is in large part an admission that Tunica County was not notified of the additional services provided and did not have the opportunity to object.[5] The contract requires notification prior to providing service. It does not allow for assumptions that additional services are desired.

Exhibit D references a change request dated November 25, 2003 and a meeting that took place regarding that request in May 2004. Exhibit C indicates by inference that this November written request was discussed with Murphree in October 2003. It also states that Tetra Tech was aware of additional expenses more than a year prior to this, but did not present a request for those expenses at WPA's request. Again this shows that WPA/Tetra Tech had knowledge of additional expenses and failed to notify Tunica County.

Exhibit E dated January 12, 2005 admits that the proposed Additional Service Request is for work that dates back to 2002. It then goes on to state that, "no request was made at that time." This too shows a lack of notification. Under the terms of the contract, without notification there is no liability on the part of the county. WPA argues that the change in scope

---

[5] WPA's response to the original motion to dismiss states that "dating back at least as early as April 11, 2002" Tunica County was made aware of the need for additional services. This date, however, is in no way asserted in the amended complaint.

put Tunica County on notice of the need for additional services.  However, the contract is explicit in showing the steps needed for notice.  First there must be a change in scope and that change then triggers the need for notice.  This separate requirement, under the plain language of the contract, means that a change in scope itself can not be the notice required.  Reading the complaint as broadly as possible, Tunica County can not be liable for breach of the contract prior to the notification in October 2003.  This is the earliest date of notice possibly contemplated by the pleadings.

All claims arising before October 2003, under the breach of contract theory, are dismissed.  Any claims arising after that notification remain.

<u>Quantum Meruit</u>

WPA concedes in its initial response to the motion to dismiss that the quantum meruit claim asserted fails.  This claim is therefore dismissed consistent with the court's initial order in this matter.

<u>Equitable Estoppel</u>

Under Tennessee law equitable estoppel requires action by both parties.  First, as to the party to be charged, (1) there must be a false representation or concealment of material fact; (2) that misrepresentation must have been made with knowledge of the facts; and (3) the misrepresentation must have been made with the intention that it be acted upon.  *Collins v. Summers Hardware and Supply Co.*, 88 S.W. 3d 192, 201 (Tenn. Ct. App. 2002) (citing *Ryan v. Lumbermen's Mutual Cas. Co.*, 485 S.W. 2d 548, 550 (Tenn. 1972).   The party relying on equitable estoppel must then show "(1) his or her lack of knowledge . . . of the truth as to the facts in question; (2) his or her reliance upon the conduct of the party who is estopped;" and (3)

action by the invoking party based on the misrepresentation "of such a character as to change that party's position prejudicially." *Sexton v. Sevier County*, 948 S.W. 2d 747, 751 (Tenn. Ct. App. 1997) (internal citations omitted). This doctrine is not favored by Tennessee law. *Id*. at 750 (internal citations omitted). Additionally, "very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Id*. (internal citations omitted).

In framing this claim WPA argues that Tunica County agreed to increased costs during a February 7, 2002 meeting. According to WPA this is Tunica County falsely representing a material fact that was subsequently relied on by WPA/Tetra Tech. However, WPA's own filings show that this is less than the whole story. First as stated above a change in the scope of the project did not automatically make Tunica County liable for additional services, but instead simply served as a condition precedent for WPA to provide notice that additional services would be required.

Secondly, as admitted in Exhibit C to the complaint Tetra Tech foresaw problems with the budget and requested a meeting with Tunica County. However, no change order effecting Tetra Tech's compensation was submitted at that meeting. At that meeting Murphree agreed to the more elaborate site plan with a stipulation that possible cost alternatives would be listed in the subsequent bid documents confirming that agreement. These alternatives were taken out of the bid documents, allegedly with the knowledge of Tunica County. However, those documents do not reflect the monies which WPA now seeks. In fact, Exhibit C shows that more than a year later, WPA/Tetra Tech is for the first time presenting this requested change to Tunica County. Additionally, instead of claiming that Tunica County knew they were not going to pay for work agreed too, Exhibit C states "we feel that it is evident that Tunica County was also surprised at the complexity, additional cost, and level of finishes of the final site design." WPA's own

complaint states that Tunica County was surprised by the changes. A party that is surprised can not have made a material misrepresentation in order that the other party might rely on that misrepresentation. In order to misrepresent their intention to pay, Tunica County would have had to had knowledge of the additional expenditure and knowledge that they weren't going to pay that expenditure. Additionally, they would have had to intend for WPA/Tetra Tech to rely on that misrepresentation. Instead Tunica County was "surprised" by the additional costs. This taken alone shows the lack of the requisite intent.

As such under Tennessee law, Tunica County did not make a material misrepresentation and can not be liable under a theory of equitable estoppel. Any claim under this doctrine is dismissed.

<u>Request for Interlocutory Appeal</u>

Tunica County's motion asks the court to certify four questions for interlocutory appeal: whether (1) the choice of law provision in the primary contract is enforceable in view of the facts of this case; (2) Mississippi law concerning the requirement of written change orders with a public body is so ingrained in Mississippi's public policy that it will not be set aside in favor of Tennessee law; (3) Mississippi law concerning the requirement that a contract modification with a board of supervisors be entered on the board's minutes is so ingrained in Mississippi public policy that it will not be set aside in favor of Tennessee law; and (4) Mississippi law concerning the requirement that a contract modification with a board of supervisors be entered on the board's minutes is so ingrained in Mississippi public policy that Tennessee's law of equitable estoppel can not be applied in this case.

These requests are rendered moot by the court's ruling.

<u>Request for Attorney's Fees</u>

WPA requests attorney's fees as it considers the present motion "an affront to [this] Court."  The court finds the motion raises substantial and reasonable issues.

WPA's request for attorney's fees is denied.

<u>Conclusion</u>

This opinion addresses all the relevant issues raised by Tunica County both in its original motion to dismiss and its subsequent motion to reconsider.  Justice requires that this court reconsider its ruling in order to properly apply the law.  Based on the above reasoning all claims against Tunica County are dismissed except those for work done after October 2003 and arising under a breach of contract theory.

Tunica County's motion for relief from judgment or in the alternative for interlocutory appeal by permission is GRANTED in part and DENIED in part.

This the 21st day of July, 2008

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**