# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**WILLIAMSON POUNDERS ARCHITECTS, P.C.**                         **PLAINTIFF**

**V.**                         **CASE NO. 2:06CV206**

**TUNICA COUNTY, MISSISSIPPI, ITS BOARD OF
SUPERVISORS AND ITS BOARD MEMBERS,
JAMES DUNN, CEDRIC BURNETT, PAUL BATTLE, III
CURTIS JACKSON, AND BILLY PEGRAM**                         **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the motion [86] of the plaintiff, Williamson Pounders Architects, P.C. ("WPA"), to alter the judgment of the court issued July 21, 2008.

### Facts

On May 15, 2001, Tunica County[1] entered into a standard American Institute of Architects ("AIA") contract with WPA to design a project known as the Tunica County River Front Park. On May 25, 2001, WPA entered into an AIA consultant contract with PDR Engineers, Inc., a Tetra Tech Company ("Tetra Tech").

On February 7, 2002, WPA and Tetra Tech met with county representatives. During that meeting County Administrator Kenneth Murphree requested changes that resulted in an increase in the scope and complexity of the project. The overall budget increased from $18 million to $24 million. On November 25, 2003, Tetra Tech submitted a change order request for additional services to WPA. In May 2004, Tetra Tech, WPA, and Tunica County held a meeting regarding the change order request. WPA contends that Tunica County acknowledged the amount owed

---

[1] In addition to Tunica County, WPA has named the Board of Supervisors and its individual members as defendants in this action. For the purposes of this motion there is no distinction between those groups. The court will refer to the defendants generally as Tunica County.

and requested more information detailing the request. Tunica County denies further amounts are owed to Tetra Tech or WPA. Tetra Tech mailed Tunica County a letter outlining the increases in the project on June 3, 2004. On January 12, 2005, WPA sent a letter to Tunica County requesting payment of the change order. The instant suit was filed December 13, 2006 seeking fees in the amount of $203,195.00. On January 19, 2007, Tunica County filed a motion to dismiss for failure to state a claim upon which relief may be granted. This court denied that motion on September 28, 2007.

Tunica County then filed a motion to reconsider that decision. On July 21, 2008, the court granted that motion in part. WPA then filed the instant motion. While the court's July Order sets forth a number of points, WPA only requests the court to reevaluate its ruling disallowing recovery for work performed prior to October 2003. As laid out in that Order, the court found WPA could not recover because it failed to provide notice to Tunica County as required by the plain language of the contract. WPA asks the court to find that notice was given on February 7, 2002 or that even if their was no formal notice as it can recover under the Tennessee law theory of an implied contract.

Standard of Review

Requests to alter or amend are controlled by Federal Rule of Civil Procedure 59(e). Under Rule 59(e), there are three possible grounds for granting a motion to alter or amend: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

WPA does not contend there has been a change in the law or that new evidence is

available. Instead they proceed under the theory there is a need to correct a clear error of law or prevent manifest injustice.

The original motion in this matter was decided as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). However, both parties make reference to outside sources in their arguments here and the court finds this motion would best be construed as a motion for summary judgment.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

<u>Analysis</u>

Because this motion is intricately related with two previous orders the court will consider arguments raised in those previous motions. The court finds justice would best be served by considering all legal grounds so that the correct answer to the questions presented can be determined.

First, WPA asks the court to find that notice, as required by the contract, was given on February 7, 2002. That claim is simply not supported by the evidence. No doubt a February 2002 meeting occurred regarding increasing the scope of the project. At that meeting the parties discussed an expansion requiring additional costs. Under the terms of the contract this is not enough to provide notice. As the court previously ruled the contract requires a two step process before notice is effective. First there must be a change in scope and that change then triggers the need for written notice. This separate requirement, under the plain language of the contract, means that a change in scope itself can not be the notice required. WPA can not rely on a meeting discussing a change in the scope of the project as its required notice.

Exhibit C to the Amendment Complaint is a letter from Tetra Tech to WPA dated November 25, 2003. In that letter Tetra Tech Senior Project Manager Adam Brown states, "[w]e took the County's acceptance of the potential budget overruns as recognition by the County that greater effort would be required on behalf of the design team. It has become apparent that this may not have been the case." In his deposition as WPA's corporate representative Brown attempted to testify that written notice was actually provided around the time of the February meeting. However, when questioned further he admitted that testimony was just speculation and he had never seen any written notice. Brown's statements show Tunica County was not given notice.

Exhibit E to the Amended Complaint is a letter from WPA to Tunica County dated January 12, 2005. This letter admits that requests were not made in 2002 because outside factors were threatening the project. Again this is an admission that written notice was not provided to Tunica County.

4

The only evidence WPA can rely on in making its claim notice was given is the affidavit of Frank B. Gianotti, III. Gianotti's affidavit states that Tunica County's representative agreed to pay increased in costs as discussed at the February 7, 2002 meeting. This claim fails on a number of grounds. First this is a self-serving affidavit. "Unsubstantiated assertions are not competent summary judgment evidence." *Hugh Symons Group, PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-34 (1986); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Self-serving affidavits employed to create questions of material fact should be carefully scrutinized by courts. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004). Gianotti offers nothing to support his claim. Without at least some corroborating documentation, the court finds little reason to accept Gianotti's statement as summary judgment evidence. Further even if the court did accept Gianotti's statement as true, the statement is inconclusive. The statement does not claim notice was provided, but simply states Tunica County agreed to pay for changes in the scope of the project. Clearly Tunica County did pay for some changes. WPA alleges this February meeting increased the scope of the project by six million dollars. The present suit is over less than $300,000. Taken together these facts simply can not show that Tunica County agreed to pay for the small portion of monies currently in dispute.

As such WPA's request that the court find notice was given in February 2002 is denied.

Secondly, WPA asserts it can recover even if it did not comply with the notice provisions in the contract. Here they proceed under the theory that Tennessee law allows waiver of written change order requirements by either knowledge that extra work is being performed or a course of dealing between the parties where the contract provision is not strictly enforced. *See Moore*

5

*Construction Co., Inc. v. Clarksville Dept. of Electricity*, 707 S.W. 2d 1, 13 (Tenn. Ct. App. 1986).

The court's July 21, 2008 Order held that WPA failed to allege facts in their complaint which would allow them to proceed under this theory. Tunica County has subsequently produced at least some evidence that a course of dealing may have existed between the parties where written change orders were not required. In evaluating this information the court finds conflicts of law rules still prohibit recovery under this theory.

Federal jurisdiction in this case is based on diversity of citizenship. This court is thus bound to apply Mississippi's rules regarding conflict of laws. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In analyzing conflicts of law questions, Mississippi recognizes that "the law of a single state does not necessarily control every issue in a given case." *Boardman v. United Services Auto Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985). Mississippi has adopted a "general rule . . . that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985). However, that principle is tempered where a choice of law provision would violate the forum state's public policy.[2] *Id*.

---

[2] Tunica County asserts this represents Mississippi adopting Restatement (Second) of Conflict of Laws, § 187. The rule put forth by the Mississippi Supreme Court, however, differs from § 187. The Mississippi rule takes into account the public policy of the forum state. Section 187 takes into account "the policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187. This difference may not affect the choice of public policy to use in the present matter, but it does call into question Mississippi's adoption of § 187. *But see* Newman v. Newman, 558 So. 2d 821, 823 (Miss. 1990) ("[I]n 1968 this Court embraced the choice of law principles now generally advanced in Restatement (Second) of Conflict of Laws (1971)."). This court does not reach that issue as the Mississippi Supreme Court has expressed

Article 9.1 of the contract between Tunica County and WPA contains a choice of law provision designating that Tennessee law will apply to the agreement. Additionally, there is no dispute that WPA's principal place of business is in Tennessee and thus the choice of law provision clearly has some "real relation" to the state law chosen to govern the contract. The Mississippi Supreme Court has held that "no foreign state's substantive law will be enforced in courts of this state where to do so would be offensive to the deeply ingrained or strongly felt public policy of the state." *Boardman*, 470 So. 2d at 1038. The court in that matter found that all Mississippi laws, whether statutory or part of the common law, reflected the public policy of the state. *Id*. The court, however, recognized some public policies "are more fundamental and more inviolable than others . . . reflect[ing] public policies which are more strongly felt and more deeply ingrained than others." *Id*. at 1038-39. The court then states public policy will only override the enforcement of general conflict of laws principles when justice requires those fundamental principles preclude enforcement of the laws of another state. *Id*. at 1039.

WPA asserts Mississippi courts would enforce the Tennessee law of implied contracts. It cites *Herring Gas Co., Inc. v. Magee* for this principle. 22 F.3d 603 (5th Cir. 1994) (applying Mississippi law).

In *Herring Gas*, the court examined a non-compete agreement between a propane retailer and its former supervisor of sales for Mississippi and Louisiana. *Id.* at 604. The non-compete agreement precluded Magee from working in propane sales within fifty miles of any Herring location for six years following the termination of his employment. *Id.* The agreement stipulated that it was governed by Mississippi law. *Id.* This agreement was valid under Mississippi law,

---

its use of forum state policy in analogous cases and this court will apply that standard in the present matter.

but was in violation of a strong Louisiana policy prohibiting non-compete agreements that lasted more than two years. *Id.* at 605. Magee argued that Mississippi courts would have divided the agreement, enforcing it in Mississippi and voiding it in Louisiana. *Id.* at 606. Applying Restatement (Second) of Conflict of Laws § 187, the district court held that Mississippi law governed the contract because Louisiana's interest in the non-compete agreement was not materially greater than Mississippi's interest. That court refused to divide the agreement between the two states in which it was to be enforced. *Id.* The Fifth Circuit affirmed the decision. *Id.* at 606-08.

The Fifth Circuit applied Restatement § 187 as both parties agreed that was the law Mississippi courts would follow. The Fifth Circuit assumed *arguendo* that the parties were correct while expressing their own reservations as to whether Mississippi would follow § 187 which it has not formally adopted. *Id*. at 605 fn.3; *see also supra*, note 2.

*Herring Gas* is distinguished from the instant matter. In *Herring Gas*, Magee wanted to partially invalidate a choice of law provision based on the public policy of a foreign state. While this is possible under § 187, it occurs only where a foreign state's interest in the contract is materially greater than the designated state. In the present action Tunica County asserts that Mississippi public policy should prevent enforcement of the choice of law provision. The rule adopted by the Mississippi Supreme Court explicitly holds that it will not enforce choice of law provisions that violate the fundamental policies of the *forum* state. *Miller*, 481 So. 2d at 262. In the present action Mississippi is that forum state. In *Herring Gas*, the Fifth Circuit did not decide Mississippi would ignore important public policies, but instead decided the state would not give weight to Louisiana's public policy under this set of facts. Mississippi has said that it

8

will consider its own public policy. Thus *Herring Gas* is inapplicable.

Tennessee law allows for oral contracts to be enforced against governmental entities. *Computer Shoppe, Inc. v. State of Tennessee*, 780 S.W.2d 729, 735 (Tenn. Ct. App. 1989); *Moore Construction Co., Inc. v. Clarksville Dept. of Elec.*, 707 S.W. 2d 1, 12 (Tenn. Ct. App. 1985). Mississippi has explicitly held that oral contracts can not be formed by or enforced against county boards of supervisors. *Butler v. Board of Supervisors for Hinds County*, 659 So. 2d 578, 581 (Miss. 1995).

The Mississippi Supreme Court has dealt with this issue for more that 125 years. Their rulings have consistently held that a board of supervisors can "act only as a body, and its act[s] must be evidenced by an entry on its minutes." *Nichols v. Patterson*, 678 So. 2d 673, 677 (Miss. 1996) (quoting *Smith v. Board of Supervisors of Tallahatchie County*, 86 So. 707, 709 (Miss. 1921). Further they have stood by the principle that "a county board of supervisors can contract only by an order on its minutes" finding that rule to be "well established." *Butler* 659 So. 2d at 581; *see also Warren County Port Comm'n v. Farrell Const. Co.*, 395 F.2d 901 (5th Cir. 1968) (applying Mississippi law) (denying payment from board of supervisors for contractor who performed additional work orally ordered by engineer); *Nichols*, 678 So. 2d at 676-77; *Board of Supervisors of Tishomingo County v. Dawson*, 45 So. 2d 253, 256 (Miss. 1950); *Lee County v. James*, 174 So. 76 (Miss. 1937); *Bridges v. Board of Supervisors of Clay County*, 58 Miss. 817 (1881) (denying additional payment to a contractor where two board members mislead the contractor in order to receive a lower bid). This rule applies not only to contract formation, but also to the alteration of a contract. *Warren County Port Comm'n*, 395 F.2d at 903-04 (citing *Lamar County v. Tally & Mayson*, 77 So. 299 (Miss. 1918)).

This difference reflects a public policy conflict between Tennessee and Mississippi law. The question of enforcement then becomes whether the Mississippi public policy is so fundamental that justice requires the rejection of Tennessee law as it deals with implied contracts made by boards of supervisors.

Mississippi courts have addressed the minutes requirement's place in the public policy. The state Supreme Court has held that the minutes requirement is "an important public policy," writing that the "public interest requires adherence thereto, notwithstanding the fact that in some instances the rules may work an apparent injustice." *Butler*, 659 So. 2d at 579. The court went on to state that even its extension to contract modification layed out in *Warren County* was based on "a long history of adherence by the . . . Court to the public policy involved." *Id*. at 581. The reasoning behind this rule is threefold: (1) to protect a board from being bound by the acts of its individual members or agents; (2) because the public is entitled to the judgment of the board after examination of a proposal, a discussion of it among the board members, and a result representing the wisdom of the majority rather than the opinion or preference of some individual member; and (3) so "that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses . . ., but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access." *Id*.; *Lee County*, 174 So. at 77.

This well established history coupled with the rule's importance in providing for open governance of Mississippi's counties makes this an important public policy. As a fundamental and inviolable policy of the state, no contract provision violating it may be brought in a Mississippi court. In the instant matter, the choice of law provision is ineffective in requiring the

application of Tennessee law as it relates to enforcing any oral modification of the contract. Mississippi law will apply to any claim seeking to enforce a contract modification not recorded in Tunica County's minutes.  This does not invalidate the choice of law provision in its entirety, but simply renders it unenforceable on this issue.

WPA is thus unable to proceed under the theory of implied contract and there request to be allowed to recover because of a course of dealing between the parties is denied.

Conclusion

WPA's motion to alter the court's July 21, 2008 Order is denied.  A separate order consistent with this opinion will issue on this date.

This the 29th day of October, 2008

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**